UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

WANDA WALKER,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

No. 1:16-CV-03223-RHW

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 13 & 14. Plaintiff Wanda Walker brings this action seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision, which denied her applications for Disability Insurance Benefits and Supplemental Security Income under Titles II & XVI of the Social Security Act, 42 U.S.C §§ 401-434 & 1381-1383F. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the

Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Ms. Walker's Motion for Summary Judgment.

## I. Jurisdiction

Ms. Walker filed her applications for supplemental security income and disability insurance benefits on March 10, 2011. AR 362-63. Her alleged onset date is January 14, 2008, AR 362, later amended to March 1, 2011, AR 107. Her application was initially denied on August 4, 2011, AR 225-28, and on reconsideration on January 27, 2012, AR 232-36.

Administrative Law Judge ("ALJ") John Bauer held a hearing on December 12, 2012. AR 50-91. On January 18, 2013, ALJ Bauer issued a decision finding Ms. Walker ineligible for disability benefits. AR 205-215. On July 25, 2014, the Appeals Council vacated the hearing decision and remanded the case for further proceedings. AR 221-23. On remand, the Appeals Council directed that the new ALJ would: (1) give further consideration to the treating source opinion of Dr. Cynthia Horton, M.D., and explain the weight given to the opinion; (2) evaluate the opinion of counselor Steven Woolpert, M.S.; and (3) if warranted by the expanded record, obtain supplemental evidence for a vocational expert to clarify the effect of the assessed limitations on Ms. Walker's occupational base. AR 29, 222.

A second hearing was held before ALJ Jo Hoenninger on April 8, 2015, AR 92-124, and a supplemental hearing was held on June 24, 2015, AR 125-52. ALJ Hoenninger (hereinafter "the ALJ") issued a decision on October 28, 2015, finding Ms. Walker ineligible for disability benefits. AR 29-43. The Appeals Council denied Ms. Walker's request for review on November 8, 2016, AR 1-5, making the ALJ's ruling the "final decision" of the Commissioner.

Ms. Walker timely filed the present action challenging the denial of benefits on December 21, 2016. ECF No. 3. Accordingly, Ms. Walker's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

## II. Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsburry v. Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. §§ 404.1572 & 416.972. If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§ 404.1571 & 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09 & 416.908-09. If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the

Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

//

//

### III. Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104,

1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld").  Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## IV. Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings, and accordingly, are only briefly summarized here. Ms. Walker was born in 1964. AR 362. Ms. Walker has a GED as well as vocational training in home schooling. AR 410. Her previous work experience includes general labor, scale operation, mushroom picking, sales, and flagging. AR 41, 410.

## V. The ALJ's Findings

The ALJ determined that Ms. Walker was not under a disability within the meaning of the Act from January 14, 2008, through the date of the decision. AR 29-43.

**At step one**, the ALJ found that Ms. Walker had not engaged in substantial gainful activity since January 14, 2008, her alleged onset date[1] (citing 20 C.F.R. §§ 404.1571 *et seq*. and 416.971 *et seq*.). AR 30.

**At step two**, the ALJ found Ms. Walker had the following severe impairments: mild lumbar and thoracic degenerative disc disease, mild carpal tunnel syndrome, and chronic obstructive pulmonary disorder ("COPD") (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)). AR 32.

At **step three**, the ALJ found that Ms. Walker did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. §§ 404, Subpt. P, App. 1. AR 34.

At **step four**, the ALJ found Ms. Walker had the following residual functional capacity. She can perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with the following limitations: (1) she can frequently climb ramps and stairs; (2) she can occasionally climb ladders, ropes, and scaffolds; (3) she can frequently balance, kneel, crouch, and crawl; (4) she can occasionally stoop; (5) she can frequently handle and finger with the left upper extremity; (6) she should avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation; and (7) she should avoid concentrated exposure to

---

[1] While the record demonstrates that counsel for Ms. Walker amended the alleged onset date to March 1, 2011, at the hearing, the ALJ proceeded with her analysis using the original alleged onset date. Since neither party challenges this, the Court accepts the ALJ's finding on this issue.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 8

hazards such as unprotected heights and exposed moving mechanical parts. AR 35-41.

The ALJ determined that Ms. Walker is capable of performing past relevant work as a sales associate, a scale operator, and a flagger. AR 41.

At **step five**, the ALJ also found that in light of her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Ms. Walker can perform. AR 41-43. These include cashier and assembler. AR 42-43. The ALJ consulted a vocational expert and the Dictionary of Occupational Titles in making this determination. *Id.*

## VI. Issues for Review

Ms. Walker argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, she argues the ALJ erred by: (1) excluding Ms. Walker's mental impairments as severe at step two and in subsequent steps; (2) improperly determining that Ms. Walker's symptom testimony was not credible; and (3) improperly weighing the medical evidence. ECF No. 13 at 5.

## VII. Discussion

**A. The ALJ did not err at Step Two by failing to consider Ms. Walker's mental impairments severe.**

At step two in the five-step sequential evaluation for Social Security cases, the ALJ must determine whether a claimant has a medically severe impairment or combination of impairments. An impairment is found to be not severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." *Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir. 1988) (quoting SSR 85-28). Step two is generally "a de minimis screening device [used] to dispose of groundless claims," and the ALJ is permitted to find a claimant lacks a medically severe impairment only when the conclusion is clearly established by the record. *Webb v. Barnhart*, 433 F. 683, 687 (9th Cir. 2005) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.1996)).

A large portion of the record shows mental health findings based on subjective reports, which are unreliable. Dr. Jay Toews, Ed.D., attempted to perform a mental health consultative evaluation in July 2011, but Ms. Walker was "patently non-cooperative." AR 583. Dr. Toews described Ms. Walker as presenting as "vague, circumstantial" and appearing to engage in "sympathy seeking behavior." AR 584. Ms. Walker grew increasingly angry and uncooperative during testing. AR 585. While Dr. Toews ultimately diagnosed "rule out malingering," Ms. Walker's score on the Structured Inventory of Malingered Symptomatology ("SIMS") was 29, well above the cutoff of 14 to demonstrate

malingering. *Id.* The record as a whole clearly demonstrates that Ms. Walker's subjective complaints are unreliable. *See infra* at pp. 13-15.

With regard to objective evidence, throughout the record there are very few objective findings, such as mental status exmainations, and those that are present demonstrate normal findings. AR 32-33, 595, 602, 681, 683, 685. For example, at an examination on March 28, 2013, evaluator Betsy Kean, PA-C, found Ms. Walker to have a depressed mood, but otherwise her observations appear normal. AR 734.

While Ms. Walker did attend regular therapy sessions with Steven Woolpert, M.S., the record does not support the mental limitations he provided on October 18, 2012. AR 693-95. Mr. Woolpert diagnosed major depressive disorder and anxiety disorder, and he opined that Ms. Walker has limited concentration, difficulty interacting with unknown people or groups, and general energy limitations due to her physical problems. AR 694.

The ALJ was not required to accept these non-medical findings. Therapists and counselors are considered "other sources." 20 C.F.R. §§ 404.1513(d), 416.913(d). An ALJ is required to "consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.1987). Non-medical testimony can never establish a diagnosis or disability absent corroborating competent medical evidence. *Nguyen*

*v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996). An ALJ is obligated to give reasons germane to "other source" testimony before discounting it. *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir.1993).

Here, the ALJ noted that Mr. Woolpert conducted no mental status examinations, and the minimal objective findings, along with Ms. Walker's numerous documented activities made Mr. Woolpert's 2012 opinion "completely implausible" and afforded it no weight. AR 41. The record supports these findings, particularly with regard to her social activities. *See infra* at pp. 13-15. The ALJ did not err in rejecting the limitations opined by Mr. Woolpert. Thus, the ALJ also did not err in rejecting these at step two.

Also supporting the ALJ's determination is Ms. Walker's refusal to take medication to treat her allegedly severe mental health conditions. AR 735. She informed Ms. Kean in 2013 that she did not want to take medications due to her history of gastrointestinal issues, *id.*, yet the record demonstrates that Ms. Walker takes numerous medications, including the psychiatric medication Adderall,[2] AR 901. Additionally, Ms. Walker voluntarily chose to discontinue therapy when Mr. Woolpert retired, AR 768, again supporting a finding of non-severe mental impairments.

---

[2] The ALJ also rejects Ms. Walker's ADHD diagnosis as a severe impairment because it is not supported by the record. AR 34. The Court affirms this finding, as no objective testing was completed and the diagnosis appears entirely based on self-reporting by Ms. Walker, who the ALJ properly found not credible. *See infra* at pp. 13-15.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 12

Under step 2, an impairment is not severe if it does not significantly limit a claimant's ability to perform basic work activities. *Edlund v. Massanari*, 253 F.3d 1152, 1159 (9th Cir. 2001) (citing 20 C.F.R. § 404.1521(a)(b)). The record as a whole supports the ALJ's rationale for finding Ms. Walker's mental health to be a non-limiting factor in this case.

**B. The ALJ did not err in the determination of Ms. Walker's credibility.**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti,* 533 F.3d at 1039. First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id*.

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of

treatment; and (3) the claimant's daily activities." *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996).

As referenced above, there is evidence of malingering in the record. AR 583-85; *see supra* at p. 10 (score of 29 on SIMS testing, where 14 is considered the cutoff for malingering). This alone could sustain an adverse credibility determination. *See Tommasetti,* 533 F.3d at 1039. However, the ALJ also provided several other legally sufficient reasons for this adverse credibility finding.

First, the objective evidence does not support Ms. Walker's subjective symptom testimony. Overall, the record contains relatively few descriptions of physical examinations of Ms. Walker's back and spine or other objective evidence, and those included evidence largely benign findings. AR 599, 602, 669, 833. For example, x-rays and MRI images showed only mild to moderate degenerative changes. AR 626-35. Likewise, treatment records of Ms. Walker's carpal tunnel syndrome show mild findings and conservative treatment. AR 562-63, 602. Prescriptions for conservative treatment only can suggest a lower level of pain and functional limitation than asserted. *See Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995). Similarly, Ms. Walker's COPD is effectively managed through medication. AR 63, 81, 114, 615.

Even more significantly, Ms. Walker's activities strongly do not support her reported levels of symptoms and limitations. Throughout the record are references

to parenting activities, including caring for her children and grandchildren and homeschooling her daughter. AR 723, 772, 777-78, 1016. She also reported that she slept on the ground while camping, traveled to Idaho, kept a garden, milked goats, and cared for a collection of animals on her farm. AR 744, 777, 790, 883, 891, 1050-51, 1056-57. Ms. Walker told a Cooperative Disability Investigations Unit ("CDIU") investigator that she regularly bought and sold animals at yard sales and had recently loaded a 340-pound calf into her minivan to sell. AR 1057. These activities are in direct contradiction to her allegations of disabling symptoms.

Overall, the record supports the ALJ's findings that Ms. Walker's subjective symptom testimony was not credible.

**C. The ALJ did not err in evaluation of the medical record.**

The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: (1) treating providers, those who actually treat the claimant; (2) examining providers, those who examine but do not treat the claimant; and (3) non-examining providers, those who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id.* at 830-31. In the absence of a contrary opinion, a treating or examining provider's opinion may not

be rejected unless "clear and convincing" reasons are provided. *Id*. at 830. If a treating or examining provider's opinion is contradicted, it may only be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31. The ALJ may meet the specific and legitimate standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [his or her] interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citation omitted).

Dr. Cynthia Horton, M.D., began treating Ms. Walker in 2005, and saw her 43 times as of March 2015. AR 925. Dr. Horton provided multiple opinions that were considered by the ALJ. AR 39-40, 925-26. The ALJ gave them little weight, and Ms. Walker challenges this. ECF No. 13 at 16-20.

On March 12, 2011, Dr. Horton opined that Ms. Walker was severely limited and that she could not sit for more than 2 hours and could not lift more than 10 pounds. AR 579. She limited Ms. Walker to sedentary work. AR 580. Dr. Horton then recommended a thoracic MRI and nerve conduction test for "likely" carpal tunnel syndrome. *Id.* The ALJ reasoned that this showed Dr. Horton did not have the benefit of objective testing and relied primarily on Ms. Walker's subjective testimony, which was not credible. AR 40; *see supra* at pp. 13-15. This

finding is supported by the lack of objective findings in Dr. Horton's records from this period. AR 602.

Dr. Horton provided another opinion on March 5, 2012. AR 841-44. This form reiterated similar findings, except this time limiting Ms. Walker to the ability to sit no more than 5-10 minutes at a time without standing. AR 841. In addition to a lack of objective records that do not support this, Ms. Walker's activities strongly contradict this finding. The record notes that Ms. Walker drove to various animal sales and Idaho, among other activities that are inconsistent with this level of impairment. *See* AR 744, 777, 790, 883, 891, 1050-51, 1056-57. It is also inconsistent with imaging that showed no more than mild to moderate degenerative changes. AR 626-35.

Finally, Dr. Horton reiterated similar findings on March 19, 2015, although this time opining that Ms. Walker could sit for two hours at a time, but could now only lift five pounds. AR 925-26. Again, there are no objective findings in the record that support these limitations. Dr. Horton notes that nerve conduction velocity testing for Ms. Walker's carpal tunnel syndrome showed only mild abnormalities. AR 925. While this may "not always correlate well with the severity of disease," *id.*, there is no additional objective evidence and the only remaining evaluation of the severity relies on Ms. Walker's subjective complaints, which are not credible. *See supra* at 13-15.

Furthermore, the limitations opined by Dr. Horton strongly do not match Ms. Walker's activities. Despite Dr. Horton's statement that Ms. Walker could not even lift a coffee cup for more than a few minutes, AR 925, Ms. Walker admitted just a few months later to the CDIU investigator that she had loaded a 340-pound calf into her minivan to take for sale, and that she regularly traveled to sale yards to buy and sell animals, AR 1057. Additionally, Ms. Walker participates in a variety of activities that are inconsistent with these extreme limitations. *See supra* at pp. 14-15.

In sum, Dr. Horton's opinion is inconsistent with substantial evidence in the record and need not be given controlling weight based solely on the fact she is a treating physician. *See generally Magallanes,* 881 F.2d at 751. The Court finds no error with the ALJ's weight given to this opinion and the explanations for that decision.

## VIII. Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free from legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 14,** is **GRANTED.**

| | |
|---|---|
| 1 | 3.  The District Court Executive is directed to enter judgment in favor of Defendant and against Plaintiff. |
| 2 | |
| 3 | **IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**. |
| 4 | |
| 5 | **DATED** this 19th day of October, 2017. |
| 6 | <div align="center">*s/Robert H. Whaley*<br>ROBERT H. WHALEY<br>Senior United States District Judge</div> |


1
    3.  The District Court Executive is directed to enter judgment in favor of Defendant and against Plaintiff.

    **IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

    **DATED** this 19th day of October, 2017.

                             *s/Robert H. Whaley*
                             ROBERT H. WHALEY
                       Senior United States District Judge